IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANEURY R. T. M.,

        Petitioner,

v.

CHARLES GREEN,

        Respondent.

HON. JOHN MICHAEL VAZQUEZ

Civil Action
No. 18-14908 (JMV)

**OPINION**

**VAZQUEZ, District Judge:**

**I.    INTRODUCTION**

Presently before the Court is Petitioner's § 2241 habeas corpus petition challenging his ongoing immigration detention since March 16, 2018 (the "§ 2241 Petition"). (DE 1.) By way of that pleading, Petitioner requests that this Court order "a constitutionally adequate, individualized [bond] hearing before an impartial adjudicator at which the Government bears the burden of establishing that Petitioner's continued detention is justified[.]" (*Id.* at 12.) For the reasons stated herein, the petition is granted.

**II.    BACKGROUND**

Petitioner is a native and citizen of the Dominican Republic. (*See*, *e.g.*, DE 5-1 at Ex. A.) He arrived in the United States on June 12, 1996 as a lawful permanent resident. (*Id.*) On March 4, 2016, Petitioner was convicted in New Jersey Superior Court of robbery, in violation of N.J.S.A. § 2C:15-1A(2). (*Id.*) On March 16, 2018, at the completion of Petitioner's sentence for that conviction, he was taken into custody by the United States Department of Homeland Security ("DHS"). (*Id.* at Ex. E.) Petitioner has been detained by immigration authorities ever since. At the outset, it bears noting that Petitioner has, at all times throughout this period, been held pursuant

to 8 U.S.C. § 1226(c); this is due to his robbery conviction and in light of the fact that he has never been subject to a "final" order of removal. *See Leslie v. Att'y Gen.*, 678 F.3d 265, 268-270 (3d Cir. 2012).

Respondent (hereinafter, the "Government") concedes that Petitioner has never received a bond hearing during the pendency of his "mandatory detention under § 1226(c)[.]" (*See, e.g.*, DE 5 at 5.) The record likewise reflects that Petitioner's lone request for a custody redetermination on the mandatory nature of his detention, *e.g.*, that he is in fact eligible to be released on bond, was denied by Immigration Judge ("IJ") Mirlande Tadal May 3, 2018. (DE 5-1 at Ex. G.)

Petitioner filed his § 2241 Petition on or about October 12, 2018. (DE 1.) The Government filed its relevant answer to the same on December 3, 2018. (DE 5.) Petitioner filed his formal reply on December 28, 2018 (at DE 6), followed by additional supplemental filings on January 10, 2019 (at DE 7), April 29, 2019 (at DE 9), and July 1, 2019 (at DE 10). The Government filed a sur-reply responding to the December 28th and January 10th filings on January 30, 2019. (DE 8.)

### III. ANALYSIS

Under 28 U.S.C. § 2241(c), habeas relief may be extended to an immigration detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* at § 2241(c)(3). As noted, Petitioner has, since March 16, 2018, been subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).[1] At issue here is whether Petitioner's 16-plus months of

---

[1] Under § 1226(c), "[t]he Attorney General shall take into custody any alien" who is inadmissible or deportable on the basis of enumerated categories of crimes and terrorist activities. 8 U.S.C. § 1226(c)(1). By its terms, § 1226(c) does not entitle detainees to a bond hearing. Release is authorized "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *Id.* § 1226(c)(2).

immigration detention [2] has become unreasonably prolonged as to render that detention unconstitutional.

The Supreme Court first considered the constitutionality of prolonged detention pursuant to § 1226(c) in *Demore v. Kim*, 538 U.S. 510 (2003). The *Demore* Court determined that the statute was facially constitutional as "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. In reaching this conclusion, the Supreme Court noted that in most cases detention under the statute lasted only a month and a half and that even in cases where an appeal was taken to the BIA, detention pursuant to § 1226(c) lasted an average of four months, indicating that detention under the statute was often brief and had a defined beginning and end point at the conclusion of removal proceedings. *Id.* at 529. Because the *Demore* Court found the statute constitutional, it rejected the petitioner's challenge even though he had spent a period of approximately six months in detention. *Id.* at 530. Thus, after *Demore* it was clear that detention for less than six months was insufficient to support an as-applied challenge to detention under the statute.

In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), the Third Circuit considered whether a petitioner was entitled to a bond hearing nearly three years into his detention under § 1226(c). *Id.* at 223-26. The Third Circuit held that he was, notwithstanding that provision's lack of any such requirement. "[W]hen detention becomes unreasonable," the court reasoned, "the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. The Third Circuit noted that *Demore* emphasized that "mandatory detention pursuant to § 1226(c) lasts

---

[2] The Court's review of ICE's detainee records indicates that Petitioner is currently confined at Bergen County Jail in Hackensack, New Jersey.

3

only for a 'very limited time' in the vast majority of cases," and concluded that the result in *Demore* "may well have been different" if the petitioner's detention had been "significantly longer than the average." *Diop*, 656 F.3d at 233-34 (quoting *Demore*, 538 U.S. at 529 & n.12). The Third Circuit thus interpreted § 1226(c) to "contain[] an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length." *Id.* at 235. Beyond that point – which can be determined only by a "fact-dependent inquiry," *id.* at 233 – the statute "yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose," *id.* at 235. The circuit court's interpretation of § 1226(c) relied in part on *Zadvydas v. Davis*, 533 U.S. 678 (2001), in which the Supreme Court "read an implicit limitation into" 8 U.S.C. § 1231(a)(6) – which governs detention of aliens who have already been ordered removed – so that it "d[id] not permit indefinite detention." *Id.* at 689.

The Third Circuit again applied *Diop's* reasonableness requirement in *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015). There, the circuit court held that because the petitioner's year-long detention under § 1226(c) had become unreasonable, he was entitled to a bond hearing where the government would bear the burden of "produc[ing] individualized evidence that Chavez-Alvarez's continued detention was or is necessary." *Chavez-Alvarez*, 783 F.3d at 474, 478. As in *Diop*, that conclusion resulted from the Third Circuit's "use of a balancing framework [that] makes any determination on reasonableness highly fact-specific." *Id.* at 474.

The Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), however, overruled *Diop's* statutory interpretation of 8 U.S.C. § 1226(c). *Jennings* rejected the conclusion that § 1226(c) contains an implicit reasonableness limitation. *Id.* at 846-47. The Supreme Court noted that in *Demore*, it distinguished § 1226(c) from § 1231(a)(6) (the statute at issue in

4

*Zadvydas*). *See id.* at 846. While detention under § 1231(a)(6) lacks a "definite termination point," § 1226(c) authorizes detention only until the conclusion of removal proceedings. *Id.* (quoting *Demore*, 538 U.S. at 529). *Jennings* holds that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings only if the alien is released for witness-protection purposes." *Id.* at 847 (internal quotation marks omitted). *Jennings*, however, did not address the constitutionality of § 1226(c); the Supreme Court instead remanded to the Ninth Circuit to decide that question in the first instance. *Id.* at 851. *Jennings* therefore, says the Third Circuit, "[does] not call into question [its] constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long." *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 277-78 (2018).

In sum, the constitutional holdings of *Diop* and *Chavez-Alvarez* call for a "fact-dependent inquiry requiring an assessment of all of the circumstances of any given case," to determine whether detention without an individualized hearing is unreasonable. *Diop*, 656 F.3d at 234; *see also Chavez-Alvarez*, 783 F.3d at 475 n. 7 (explaining "the highly fact-specific nature" of the balancing framework). Under this approach, district courts must determine whether an individual's detention has crossed the "reasonableness" threshold, thus entitling him to a bond hearing. Again, the reasonableness of detention depends on the facts of the detainee's individual case. *See Diop*, 656 F.3d at 232-33 (noting that the inquiry into whether detention has become unreasonable "will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances" and "declin[ing] to establish a universal point at which detention will always be considered unreasonable"). And at the point detention becomes unreasonable, there must be a bond hearing "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. In that respect, the Third

5

Circuit held in *Chavez-Alvarez* that, in the absence of bad faith by the criminal alien,[3] his or her detention without a bond hearing will often become unreasonable by the one-year mark. *See Chavez-Alvarez*, 783 F.3d at 478 ("[B]eginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time [the alien] had been detained for one year, the burdens to [the alien's] liberties outweighed any justification for . . . detain[ing] him without bond to further the goals of the statute.").

In evaluating the reasonableness of detention pursuant to § 1226(c) under the foregoing standard, this Court considers the dilatory actions of the Government, if any, and the *bona fides* of the detainee's challenge to his removal. *Id.* at 477. Moreover, as the length of detention grows, the Court may also consider whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. *See id.* at 478 ("[W]e cannot ignore the conditions of confinement. Chavez-Alvarez is being held in detention at the York County Prison with those serving terms of imprisonment as a penalty for their crimes. Among our concerns about deprivations to liberties brought about by section 1226(c) is the reality that merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures. . . . As the length of the detention grows, the weight given to this aspect of his detention increases.").

---

[3] *See Chavez-Alvarez*, 783 F.3d at 476 ("An argument could be made that aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute."); *but see K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at *3 (D.N.J. Aug. 7, 2018) ("While it remains true following *Jennings* that 'aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would otherwise not get under the statute,' *Chavez-Alvarez*, 783 F.3d at 476, it also remains true that those aliens who are merely pursuing the remedies available to them in good faith should not be penalized for pursuing their legal rights.").

Here, Petitioner has now been detained under § 1226(c) for 16-plus months without a bond hearing. His detention now exceeds the one-year threshold that the Third Circuit found constitutionally suspect in *Chavez-Alvarez*, 783 F.3d at 477. Furthermore, there is no evidence that Petitioner is challenging his removal in bad faith. Finally, the Court recognizes that Petitioner has been held in the county jails of New Jersey under conditions similar to those used to house persons accuses of serious crimes. Given these factual circumstances, the Court finds that due process requires that Petitioner be provided an individualized bond hearing "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Diop*, 656 F.3d at 233; *accord Thomas C. A. v. Green*, No. 18-1004, 2018 WL 4110941, at *5 (D.N.J. Aug. 29, 2018) (ordering bond hearing for § 1226(c) detainee who had been detained for 15 months); *K.A. v. Green*, No. 2:18-cv-3436 (JLL), 2018 WL 3742631, at *4 (D.N.J. Aug. 7, 2018) (finding that petitioner's 19-month detention under § 1226(c) "absent a bond hearing, [had become] so unreasonable as to amount to an arbitrary deprivation of liberty.").

## IV.  CONCLUSION

For the reasons stated above, the Court will grant Petitioner's § 2241 Petition. An immigration judge shall therefore be required to provide Petitioner with a bond hearing within twenty-one (21) days, at which the Government bears the burden of showing that Petitioner is either a danger to the community or a flight risk. An appropriate Order accompanies this Opinion.

August 5, 2019                                                 s/ John Michael Vazquez
Date                                                                      JOHN MICHAEL VAZQUEZ
                                                                              United States District Judge